82 N.J. Super. 593 (1964)
198 A.2d 786
TEXAS EASTERN TRANSMISSION CORPORATION, PETITIONER-RESPONDENT,
v.
TOWNSHIP OF EAST AMWELL, RESPONDENT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued December 9, 1963.
Decided March 13, 1964.
*594 Before Judges CONFORD, FREUND and SULLIVAN.
Mr. Clyde C. Jefferson argued the cause for appellant.
Mr. Worrall F. Mountain argued the cause for respondent Texas Eastern Transmission Corporation (Messrs. Jeffers & Mountain, attorneys; Mr. Robert J. Del Tufo, on the brief).
*595 Mr. Arthur J. Sills, Attorney General of New Jersey, filed a Statement in Lieu of Brief on behalf of respondent Division of Tax Appeals (Mr. Alan B. Handler, Deputy Attorney General, of counsel).
The opinion of the court was delivered by CONFORD, S.J.A.D.
This is an appeal by the Township of East Amwell, Hunterdon County, from a judgment of the Division of Tax Appeals cancelling a property tax assessment against so much of the gas transmission pipe line of the Texas Eastern Transmission Corporation as lies within that taxing district. The line is part of a gas transmission pipe system extending from Texas to Linden, N.J. The tax was imposed by the East Amwell assessor on a prorated basis for the last three months of the tax year 1961 under authority of the Added Assessment Act, N.J.S.A. 54:4-63.1 et seq. (L. 1941, c. 397). The assessment was levied on the assumption, denied by the taxpayer, that the line in East Amwell was "completed," within the meaning of the statute, on or before October 1, 1961. In cancelling the assessment the Division of Tax Appeals found that the line was not completed by that date.
The statute in question provides, in part, that:
"[W]hen any parcel of real property contains any building or other structure which has been erected, added to or improved after October 1 and completed between January 1 and October 1 following, the assessor shall, * * * determine the taxable value of such parcel of real property as of the first of the month following the date of * * * such completion, and * * * if such value so determined exceeds the assessment made as of October 1 preceding, the assessor shall enter an assessment" (Emphasis added)
against the property as an added assessment for the current year in an amount determined by estimating the proportion of the excess value represented by the ratio of the number of whole months remaining in the year after such completion to the number 12. N.J.S.A. 54:4-63.2. In other words, a new structure completed by October 1 would be subjected to *596 an added assessment of one-fourth of its taxable value for the current calendar year. A structure completed after October 1 would escape taxation wholly for the current calendar year.[1]
The added assessment statute defines the term "completed" as meaning "substantially ready for the use for which it was intended." N.J.S.A. 54:4-63.1. Interpretation of this phrase is thus the key to the determination of the issue before us.
The property here involved is part of a 36-inch pipe line which runs approximately 44 miles in this State from the Delaware River to Linden. The seven-mile portion thereof in East Amwell Township is part of a section running 41 miles between pumping stations in West Amwell Township and Linden, with no intervening pumping stations. In addition to East and West Amwell Townships and Linden, the line traverses five other municipalities. On September 30 and October 1, 1961 the line had been fully laid and backfilled in East Amwell, but not in the State as an entirety. As of the stated dates 79% of the line in the State had been laid and backfilled, and 21%, representing eight miles, remained to be laid and backfilled.
In addition to laying and backfilling, the following procedures had to be performed before the pipe line could actually be used for transporting gas from West Amwell to Linden: (a) hydrostatic testing of the line; (b) removal of the water used in such testing; (c) cleaning and drying of the pipe by running scrapers through it; (d) completion of the drying process by running gas through the pipe. Insofar as the portion of the line in East Amwell was concerned, not only had the entire pipe been laid and backfilled, but the hydrostatic testing thereof had been done. There remained only *597 the removal of the water and the cleaning and drying of the pipe. It was conceded that these latter steps had not been taken at the East Amwell portion of the pipe line because it was more convenient for the company to do those finishing operations all at one time for the whole 41-mile section between pumping stations. They were, in fact, done within a space of eight days for the entire section, and the whole line was fully ready for operation by November 28, 1961.
Pertinent to the comparison of the work done on the line in East Amwell before and after October 1, 1961 is the consideration that before that date all the following steps had been taken: acquisition of rights from property owners, municipalities and other government agencies; surveying the route and letting of construction contracts; clearing the right-of-way and grading and trenching it, stringing the pipe along the trench, welding it together, covering and lowering it into the trench, and, as noted above, backfilling and hydrostatically testing the pipe.
The taxpayer's principal contention is that on October 1 the line in East Amwell was not "substantially," or even in any sense, ready for the use for which it was intended, within the intent of the act, because the line as a whole between pumping stations, of which the segment in East Amwell was to constitute an integral functional portion, was far from ready to be used by that date for its intended purpose of transmission of gas. This approach, it seems to us, misapprehends both the underlying purpose of the Added Assessment Act and the basic philosophy of ad valorem taxation.
Assuming for the moment, as we shall presently conclude, that the portion of line in East Amwell was physically completed by October 1 to the degree that it was substantially ready to be incorporated into the line as a whole when the latter should be ready to receive it as an operating segment, we are of the view that this is all that is required to meet the intent of the statute in respect of the assessability of the portion of the line situate in the taxing district of East Amwell. Ad valorem taxation is imposed in respect of the physical *598 presence of property in a taxing district, by reason of which it is in presumptive enjoyment of the protective and other benefits of local government. And the statement appended to the bill which was enacted in 1941 as the Added Assessment Act evinces the same philosophy in relation to construction newly completed which would otherwise escape taxation. The general policy of our taxing statutes is that all property within the jurisdiction of the State should be taxed unless expressly exempted. See Appeal of New York State Realty & Terminal Co., supra, 21 N.J., at p. 97.
Thus, if as of October 1 the portion of the pipe line in East Amwell was itself substantially ready for incorporation into the pipe line as an entirety and for use as such, and was merely awaiting the readying of the line outside that municipality to receive it as part of the total operating mechanism, in the meantime fully enjoying the benefits of local government, there is no justification for delaying the taxation of the East Amwell portion in the interim. This, we take it, accords with the statutory intent in relation to a situation of this kind.
Insofar as concerns the degree of physical completion of the line in East Amwell as of October 1, 1961, we are satisfied from the evidence that it was such as met the statutory test of "substantial" readiness. The taxpayer's argument to the contrary in effect ignores the word "substantially" in the statutory definition. If the Legislature meant to require 100% completion or readiness for use it obviously would not have employed the qualifying adverb. Compare the concept of substantial performance in the law of construction contracts. Winfield, etc., Corp. v. Middlesex, etc., Corp., 39 N.J. Super. 92, 97 (App. Div. 1956). Giving the statutory language a reasonable construction in relation to the present facts, it is our conclusion that the portion of the line in East Amwell was in fact completed in that it was substantially ready for its intended use by October 1, 1961.
Cases from other jurisdictions cited by the taxpayer are not helpful, either because they involve statutes or contracts *599 not concerned with the concept of substantial completion or readiness or because they do not deal with property taxation. See, e.g., Versailles Tp. v. Ulm, 152 Pa. Super. 384, 33 A.2d 265 (Super. Ct. 1943).
Reversed.
NOTES
[1] However, a structure in process of construction on October 1 (which is the general assessment date for taxes of the following calendar or tax year) is assessable for its then construction value for the following year. See Appeal of New York State Realty & Terminal Co., 21 N.J. 90 (1956).