DeALMEIDA, P.J.T.C.
In this case the court rejects an attempt by the City of Millville to rescind a five-year tax exemption and abatement awarded by its tax assessor and ratified by its governing body for property in an area in need of rehabilitation and on which plaintiff constructed a retail store pursuant to a development agreement with the city. The city claims that its tax assessor should not have granted the exemption and abatement, and its governing body should not have ratified that decision, because the property owner applied for the exemption and abatement four days late. A close examination of the record, however, reveals that the tax assessor’s missteps, and not any negligence on the part of the property owner, caused the alleged late filing of the exemption and abatement application. In addition, the city’s ratification of the exemption and abatement and its delay in seeking to rescind these tax benefits militate against upholding the city’s actions. After a careful review of these facts, the court concludes that the City of Millville did not turn square corners in its dealings with plaintiff and was not entitled to rescind the exemption and abatement on the subject property.
I. Findings of Fact and Procedural History
Plaintiff Lowe’s Home Centers, Inc. (“Lowe’s”) owns real property in defendant City of Millville. The property, designated by the city as Block 228, Lot 6, is located in an Urban Enterprise Zone (“UEZ”), within the meaning of the New Jersey Urban Enterprise Zones Act, N.J.S.A. 52:27H-60, et seq., and in “an area in need of rehabilitation” within the meaning of the Five-Year Exemption and Abatement Law, N.J.S.A. 40A:21-1, et seq.
After a thorough financial analysis, which included consideration of the availability of a five-year exemption and abatement in the Millville UEZ, Lowe’s determined that the construction of a large *595 retail store on the property was financially feasible. Negotiations with municipal officials resulted in an April 1, 2003 Municipal Development Agreement between Lowe’s, the City of Millville and Capital Realty & Development, LLC, a limited liability company, for the construction of a retail shopping center on 33.9 acres in Millville, including plaintiffs parcel. The agreement required Lowe’s to design and construct infrastructure improvements, including sanitary sewer facilities, water lines, public street improvements, the relocation of an existing roadway, and drainage and storm water facilities to support the retail shopping center. The agreement recognized that the retail center would be constructed in a UEZ, an area in which the Legislature has authorized the award of tax benefits to encourage economic development.
The contract provided that “[a]ny notices, requests or other communications required or permitted to be given hereunder shall be in writing and ... [a]ny notice given hereunder ... shall be addressed to Lowe’s at P.O. Box 1111, North Wilkesboro, North Carolina 28656, and be sent to the attention of the Senior Vice President, Real Estate (REO) and the Law Department (REO).”
Construction of the Lowe’s Home Center retail store commenced in 2003. On May 27, 2004, a Millville construction official issued a certificate of occupancy for the store. May 27, 2004 was the Thursday before the Memorial Day holiday. It is unclear from the record what transpired in the store over the holiday weekend and the days that followed.
On June 4, 2004, the Friday after Memorial Day, the store had a “soft” opening during which store employees and their families could shop. The store opened to the general public on June 9, 2004.
On June 1, 2004, the Tuesday following Memorial Day, and the second business day after issuance of the certificate of occupancy, the then Millville tax assessor sent to Lowe’s a letter stating as follows:
Our office has been notified that you have received a Certificate of Occupancy, dated May 27, 2004 for the above property location.
*596 Enclosed, please And an application for Project Tax Abatement on the above referenced property for your completion and return to this office within thirty (30) days of the date of this letter.
Failure to submit the completed application with supporting documentation within this time frame will result in denial of the application and benefits of the Tax Abatement program.
If you have any questions, please call the office at 825-7000 ext 291.
The letter was not mailed to the North Carolina address included in the Municipal Development Agreement and which appeared on the certificate of occupancy. Instead, the letter and enclosed exemption and abatement application were sent by the assessor to Lowe’s at an address in Spokane, Washington. It is not clear from the record why the assessor mailed the letter and application to an address other than the address identified by Lowe’s in its redevelopment contract with the city. Nor does the record contain evidence explaining how the assessor obtained the Spokane address. The only document containing that address in evidence is the assessor’s June 1, 2004 letter.
Thirty days from June 1, 2004, the timeframe identified in the assessor’s letter, expired on July 1,2004.
On June 29, 2004, Lowe’s, from its corporate offices in North Carolina, sent by overnight delivery its completed exemption and abatement application with supporting documentation. Lowe’s officials in Spokane had forwarded the letter to Lowe’s tax incentives group at the company’s corporate offices in North Carolina. According to an uncontested certification, Lowe’s employees responsible for tax incentives completed the application, a one-page form, and mailed it back to the assessor on the day it was received in North Carolina. The certification credibly provides that had the application been sent to the North Carolina address identified in the development agreement, Lowe’s employees responsible for tax incentives would have completed the application on receipt and returned it the tax assessor immediately, meeting any reasonable interpretation of the thirty-day filing requirement.
The application and supporting documents were received by the assessor on June 30, 2004. It indicated that the store was completed on June 4, 2004, the date of the “soft” opening. The application was received both within the thirty-day timeframe *597 identified in the letter and within thirty days of June 4, 2004, the date the property owner identified as the date on which the building was completed.
On July 1, 2004, the assessor approved the exemption and abatement application. The five-year exemption and abatement commenced with a complete exemption for tax year 2005. Consistent with the statute, for each year following 2005, Lowe’s was to pay taxes on a percentage of the assessed value of the property, increasing in 20% increments each year until the sixth year, 2010, when the abatement would expire and Lowe’s would pay taxes on 100% of the assessed value of the property.
On February 21, 2006, a year after Lowe’s exemption and abatement program began, the governing body of Millville passed a resolution ratifying the assessor’s approval of the exemption and abatement application.
On December 19, 2006, two and a half years after the assessor’s approval of Lowe’s exemption and abatement application, the governing body, in consultation with a new tax assessor, passed a resolution purporting to rescind Lowe’s exemption and abatement, effective January 1, 2007. The city’s rationale for its action was that the June 1, 2004 letter from the former tax assessor incorrectly identified the timeframe for submission of Lowe’s application. According to the city, Lowe’s retail store was substantially completed for its intended purpose on May 27, 2004, when the Millville construction official issued a certificate of occupancy for the building. The city argues that the thirty-day period for submission of Lowe’s exemption and abatement application should have been calculated from May 27, 2004, and not from the June 1, 2004 date of the former tax assessor’s letter. Under the city’s reasoning, the time to submit the application expired on June 26, 2004, four days prior to the receipt of the application.
At oral argument, counsel for the municipality suggested that the issue of the validity of the exemption and abatement was called to the attention of the new tax assessor by a citizens’ group that had undertaken a review of various exemptions and abatements in the city. The assessor sought advice from the Division of *598 Taxation and in response was provided with a letter from the Director, Division of Local Government Services, Department of Community Affairs. The November 9, 2006 letter advises that any application for an exemption and abatement filed beyond the thirty-day period in N.J.S.A. 40A:21-16 is “subject to denial.” In addition, the letter states that “the Division believes that the Tax Assessor has the ability to rescind” an exemption and abatement awarded after the late submission of an application and that the Division of Taxation agrees with that position.
The city billed Lowe’s for taxes on 80% of the $12,850,000 assessed value of the property for tax year 2006 and 100% of the $18,564,400 assessed value of the properly for tax year 2007. The city intends to bill Lowe’s for 100% of the assessed value of the property every year after 2007. Although the city purported to rescind Lowe’s five-year exemption and abatement, the governing body’s resolution proclaims that “[i]t is the policy of the City not to take any further action against [plaintiff] for calendar years prior to 2006.” The resolution does not explain how, if the five-year exemption and abatement had been rescinded by the resolution, the city had authority to waive Lowe’s local property tax obligation on the subject property for tax year 2005.
On October 22, 2007, plaintiff filed a Complaint in this court challenging the rescission of the exemption and abatement on the property for tax years 2006 and 2007. On April 1, 2008, plaintiff filed a Complaint in this court challenging the rescission of the exemption and abatement for tax year 2008. On April 14, 2008, the city filed an Answer and Counterclaim defending its decision and seeking to increase the assessment on the property for tax year 2008.
After discovery, the parties submitted the matters simultaneously for decision without trial based on stipulated facts. R. 8:8-l(b). The court consolidates the two matters for the purposes of this opinion only.
II. Conclusions of Law
The legal authority for the tax exemption and abatement at issue here is rooted in the New Jersey Constitution:
*599 The Legislature may enact general laws under which municipalities may adopt ordinances granting exemptions or abatements from taxation on buildings and structures in areas declared in need of rehabilitation in accordance with statutory criteria, within such municipalities and to the land comprising the premises upon which such buildings or structures are erected and which is necessary for the fair enjoyment thereof. Such exemptions shall be for limited periods of times as specified by law, but not in excess of 5 years.
[N.J. Const. Art. 8, sec. 1, par. 6.]
Pursuant to this constitutional authority, the Legislature adopted the Five-Year Exemption and Abatement Law, N.J.S.A. 40A:21-1, et seq. There is no dispute between the parties that plaintiffs property qualifies for an exemption and abatement under the statute. The sole proffered basis for the city’s rescission of the exemption and abatement is its assertion that the taxpayer’s exemption and abatement application was submitted late.
N.J.S.A. 40A:21-16 establishes the time period for exemption and abatement applications. That provision states:
No exemption or abatement shall be granted pursuant to this act except upon written application therefore filed with and approved by the assessor of the taxing district wherein the improvement, conversion alteration or construction is made. Every application shall ... be filed with the assessor within 30 days, including Saturdays and Sundays, following the completion of the improvement, conversion alteration or construction____The grant of the .. exemption and abatement .. shall be recorded and made a permanent part of the official tax records of the taxing district, which record shall contain a notice of the termination date thereof. [N.J.S.A. 40A:21-16.]
“Completion” is defined by statute as “substantially ready for the intended use for which a building or structure is constructed, improved or converted.” N.J.S.A. 40A:21-3e.
No published precedents interpret this provision. This court, however, has interpreted a similar statutory provision, N.J.S.A. 54:4-63.1, concerning added assessments. That provision defines “completed” as “substantially ready for the use for which it was intended.” N.J.S.A. 54:4-63.1. This court has held that a structure “is taxable when it is ready for use” for its intended purpose. Township of Howell v. Monmouth County Bd. of Taxation, 18 N.J.Tax 149, 163 (Tax 1999). Varying tests have been applied to make the determination of whether a structure is ready for its intended use. Under the economic viability test, the court will *600 consider whether the construction has reached the point when an economically viable structure is in existence. See Beranto Towers v. City of Passaic, 1 N.J.Tax 344 (Tax 1980). The function test focuses on whether the building could be used for its actual intended purposes. See Litton Business Sys., Inc. v. Borough of Morris Plains, 8 N.J.Tax 520 (Tax 1986), aff'd, 9 N.J.Tax 651 (App.Div.1988).
Issuance of a certificate of occupancy alone is not a determinative factor. Beranto Towers, supra, 1 N.J.Tax at 349; accord B.P.U.M. Dev. and Urban Renewal Corp. v. City of Camden, 9 N.J.Tax 490, 503 (Tax 1988), aff'd, 11 N.J.Tax 95 (App.Div.), certif. denied, 118 N.J. 201, 570 A.2d 963 (1989). A certificate of occupancy is issued when a project “meets the conditions of the construction permit, and all prior approvals and has been done substantially in accordance with the code and with those portions of the plans and specifications controlled by the code,” when “all required fees have been paid in full,” when “all necessary inspections have been completed,” when “all violations have been corrected and ... any assessed penalties have been paid,” and when “all protective devices and equipment” are installed and operational. N.J.AC. 5:23-2.24. A certificate of occupancy is not an official determination that the structure is substantially ready for its intended use. The certificate of occupancy is, in effect, a declaration that the building is safe for occupancy and is in compliance with the building code and local ordinances.
It was, therefore, error for the tax assessor to rely only on the issuance of a certificate of occupancy for his determination that the subject property was ready for its intended use as a retail store on May 27, 2004. The record contains no evidence that the assessor inspected the property or considered any fact other than the issuance of the certificate of occupancy when reaching his determination that the property had reached “completion.” It was also error for the assessor to calculate the thirty-day period for submission of the application from the date of the June 1, 2004 letter. Nothing in the statute supports the concept that the application period begins when the property owner is put on notice by the assessor that he or she deems the property to be complete. *601 These conclusions, however, do not assist in the determination of when the subject property was complete within the meaning of N.J.S.A 40A:21-16.
Plaintiff urges the court to resolve the question through a finding that the building was substantially ready for its intended use as a retail store on June 4, 2004, the day of the “soft” opening. June 30, 2004, the date on which plaintiffs application was received by the former assessor, was within thirty days of June 4, 2004. Thus, a finding that the store was substantially ready for its intended purpose on June 4, 2004 would resolve this matter in plaintiffs favor. There is, however, insufficient evidence in the record to support a finding that the retail store was first substantially ready for its intended use on June 4, 2004. The record contains no detailed account of what transpired at the property between the issuance of the certificate of occupancy on May 27, 2004 and the June 4, 2004 soft opening or evidence of whether additional construction was necessary after May 27, 2004 to render the structure ready for its intended use. It may well be that at some point between May 27, 2004 and June 4, 2004 the property was substantially ready to be operated as a retail store, but plaintiff elected for business reasons not to open for employees and their families until June 4, 2004.
Because “[t]ax exemption statutes are strictly construed, and the burden of proving entitlement to an exemption is on the party seeking it,” Abunda Life Church of Body, Mind & Spirit v. City of Asbury Park, 18 N.J.Tax 483, 485 (App.Div.1999)(citing New Jersey Carpenters Apprentice Training and Educ. Fund v. Borough of Kenilworth, 147 N.J. 171, 177-78, 685 A.2d 1309 (1996), cert, denied, 520 U.S. 1241, 117 S.Ct. 1845, 137 L.Ed.2d 1048 (1997); Princeton Univ. Press v. Borough of Princeton, 35 N.J. 209, 214, 172 A.2d 420 (1961)), the court cannot find that plaintiff has established that its building was completed within the meaning of N.J.S.A. 40A:21-16 on June 4, 2004. While a trial might produce sufficient evidence to make a determination of when the subject property was substantially ready for its intended *602 use, for the reasons explained below, it is not necessary to take this approach.
Even if the court were to accept Millville’s contention that plaintiffs building was substantially ready for its intended use as a retail store on May 27, 2004, when the certificate of occupancy was issued, the city’s conduct in this matter precludes an award of relief to the municipality under the square corners doctrine.
The Supreme Court examined the square corners doctrine in the local property tax context in F.M.C. Stores Co. v. Borough of Morris Plains, 100 N.J. 418, 426-27, 495 A.2d 1313 (1985). The Court’s directive was clear:
We have in a variety of contexts insisted that governmental officials act solely in the public interest. In dealing with the public, government must “turn square corners.” Gruber v. Mayor and Twsp. Com. of Raritan Tp., 73 N.J.Super. 120 [179 A.2d 145] (App.Div.), aff'd., 39 N.J. 1 [186 A.2d 489] (1962). This applies, for example, in government contracts. See Keyes Martin v. Director, Div. of Purchase and Property, 99 N.J. 244 [491 A.2d 1236] (1985). Also, in the condemnation field, government has an overriding obligation to deal forthrightly and fairly with property owners. See Rockaway v. Donofrio, 186 N.J.Super. 344 [452 A.2d 694] (App.Div.1982); State v. Siris, 191 N.J.Super. 261 [466 A.2d 96] (1983). It may not conduct itself so as to achieve or preserve any land of bargaining or litigational advantage over the property owner. Its primary obligation is to comport itself ■with compunction and integrity, and in doing so government may have to forego the freedom of action that private citizens may employ in dealing with one another. [Id. at 426-427, 495 A.2d 1313.]
The currency of the square corners doctrine in the area of taxation was highlighted by the Court. The “statutory provisions governing substantive standards and procedures for taxation, including the administrative review process, are premised on the concept that government will act scrupulously, correctly, efficiently, and honestly. It is to be assumed that the municipality will exercise its governmental responsibilities in the field of taxation conscientiously, in good faith and without ulterior motives.” Id. at 427, 495 A.2d 1313. The doctrine “cannot be applied with rigidity or undue technicality.” New Concepts For Living, Inc. v. City of Hackensack, 376 N.J.Super. 394, 403, 870 A.2d 697 (App.Div.2005). Equitable relief under the doctrine “cannot be exercised or withheld rigidly, but [is] always subject to the guiding principles of fundamental fairness.” Id. at 404, 870 A.2d 697.
*603 The doctrine has been interpreted to include the duty to provide clear and correct notices of statutory timeframes in the area of taxation. Of particular relevance in this regard is this court’s decision in Gastime, Inc. v. Director, Div. of Taxation, 20 N.J.Tax 158 (Tax 2002). In that matter, the Director, Division of Taxation issued a notice of assessment after conducting an audit of a taxpayer. The Director conceded that the notice contained language that was “erroneous and improperly advised the taxpayer” of the deadline for filing an appeal in this court. Id. at 163. The error was inadvertent and the erroneous language reflected proposed regulatory changes that had not yet been adopted. Ibid. When the taxpayer filed an appeal in this court that was within the timeframe suggested in the Director’s notice but late under the controlling law, the Director moved to dismiss for lack of jurisdiction. Judge Kuskin rejected the Director’s argument based on the square corners doctrine:
I conclude that the “square corners” principle ... is applicable to the facts before me. Here, the Notice of Assessment sent by the Division of Taxation contained admittedly erroneous and misleading instructions to the taxpayer.... I accept the Certification’s characterization of the inclusion of this language as inadvertent. Inadvertence, however, does not relieve the government of its obligation to deal fairly, forthrightly, and scrupulously with the public.
Because the Notice of Assessment contained misleading information as to the right to appeal to the Tax Court, I hold that the Director and the Division failed to turn square corners.
[Id. at 168.]
Similarly here, the June 1, 2004 letter from the then Millville tax assessor to plaintiff contained a misleading and inaccurate statement that the time in which to file an application for an exemption and abatement expired thirty days from the date of the letter. In reality, the time to file the application commenced from the date on which the subject property was substantially ready for its intended use, either on May 27, 2004, the date on which the certificate of occupancy was issue or some other date on which the building was substantially ready to be used as a retail store. The error in the June 1, 2004 letter was not so obvious as to render it manifestly erroneous. Because the issuance of a certificate of occupancy is not determinative of when a building is substantially ready for its intended use, it would not have been unreasonable for *604 the property owner to conclude that the assessor determined the building to be completed as of June 1, 2004. In fact, in its application, the property owner declared the building to have been completed on June 4, 2004, the date of the soft opening. Nothing in the letter suggests that the property owner should have been on notice that the assessor misstated the time for submission of the exemption and abatement application.
The fact that the assessor did not intend to mislead the property owner does not preclude application of the square corners doctrine. “One of the hallmarks of the ‘turn square corners’ doctrine is that its application is not dependent upon a finding of bad faith.” CBS Outdoor, Inc. v. Borough of Lebanon Planning Bd., 414 N.J.Super. 563, 586-587, 999 A.2d 1151 (App.Div.2010); accord Gastime, supra. Application of the doctrine is warranted where, as is the case here, an apparently innocent misstatement resulted in the misidentification of a crucial filing deadline.
The assessor’s mistake was compounded by his decision to mail the June 1, 2004 letter and application to a Lowe’s address in Spokane. The development agreement between the city and Lowe’s plainly identified the appropriate address for Lowe’s employees responsible for the Millville project at the corporate offices in North Carolina. The certificate of occupancy, upon which the city places much reliance, also contains the North Carolina address. The city produced no evidence that Lowe’s requested that the exemption and abatement application be sent to Spokane. In fact, the origin of the Spokane address is unknown, as the only document in the record containing that address is the former assessor’s letter. As noted above, once the application was forwarded from Spokane to the appropriate address in North Carolina, Lowe’s employees completed the application and returned it to the tax assessor on the day that it arrived in them possession. The court concludes that had the assessor mailed the application to the correct address, it would have been returned promptly, obviating the issues now before this court.
The governing body’s subsequent ratification of the award of the exemption and abatement further supports application of the *605 square corners doctrine. The city’s opportunity to inquire into the validity of the exemption and abatement was at the time that the approval of those tax benefits came before the governing body. The fact that the members of the governing body were not aware, as counsel argues, of the late filing issue at the time that the matter came before them for approval does not assist the city’s position. The property owner should not be penalized because the governing body elected to approve the exemption and abatement without a thorough inquiry into the validity of the assessor’s decision.
Finally, rescission of a five-year exemption and abatement two years into the program smacks of inequity. The purpose of the Five-Year Exemption and Abatement Law is to promote “the construction and rehabilitation of residential and commercial and industrial structures in areas threatened with economic and social decline.” N.J.S.A. 40A:21-2. Millville and Lowe’s entered into a development contract to effectuate the purposes of the statute by constructing a retail shopping center in an area in need of rehabilitation. The city benefited from the agreement through the realization of economic opportunity in the municipality, through the creation of jobs, the increased stability of the developed area, and the generation of tax revenue once the five-year exemptions and abatements expired. Lowe’s benefited from the agreement by securing five years of tax benefits critical to the calculation of whether construction of its retail store was financially viable.
To allow Millville to rescind Lowe’s exemption and abatement almost half way through its five-year period would seriously undermine the statute’s purpose by introducing an element of uncertainty to the development planning process. Lowe’s has already constructed its store on the promise that an exemption and abatement would be available if applied for in a timely fashion. Lowe’s complied with the tax assessor’s written expression of when the filing period expired. To allow that exemption and abatement to be rescinded years after it went into effect would permit Millville to gain the benefit of its bargain with Lowe’s while depriving the property owner of the tax benefits that motivated *606 the construction of the store and which were granted pursuant to what the taxpayer reasonably believed was a reliable declaration by the tax assessor.
While government entities are free to correct mistakes, they must act fairly when doing so. University Cottage Club v. Department of Envt’l Protection, 191 N.J. 38, 56-57, 921 A.2d 1122 (2007). Millville tacitly recognizes the inequity of its position in its decision to refrain from seeking taxes on the subject property for tax year 2005. If, as Millville contends, the exemption and abatement was illegally granted by the former assessor, then the 100% exemption for tax year 2005 should not have been granted. Yet, the city does not seek payment from Lowe’s for that year. It is plain that the reason for this “policy” is that Millville’s governing body acknowledged the inequity of its decision to rescind the exemption and abatement two years after it began.
In light of these facts, the city fell short of the standards of fairness and fair dealings that taxpayers have a right to expect from public officials. Proper administration of our tax laws and the successful implementation of statutes designed to encourage economic development demand consistency and fairness from municipal officers in their dealings with property owners. These goals would be undermined were the court to allow Millville to rescind the exemption and abatement awarded to plaintiff in this case.
The court’s decision is not affected by fact that Millville’s new tax assessor relied on advice from the Director, Division of Local Government Services. The advice did not compel the assessor and the municipality to rescind the exemption and abatement granted to plaintiff. Nor would a letter from an Executive Branch official override this court’s analysis of the facts of this case or conclusions of law regarding the square corners doctrine.
Because of the court’s decision to apply the square corners doctrine, the court need not resolve the question of whether a tax assessor and governing body have statutory authority to rescind an exemption and abatement on lateness grounds two and a half *607 years after approval by the tax assessor. See N.J.S.A. 40A:21-16 (holding that an exemption and abatement, once granted, shall be “made a permanent part of the official tax records of the taxing district----”). Nor is it necessary for the court to consider whether the assessor’s June 1, 2004 letter would support application of estoppel. See Department of Envt’l Protection and Energy v. Dopp, 268 N.J.Super. 165, 175-176, 632 A.2d 1270 (App.Div. 1993); Black Whale, Inc. v. Director, Div. of Taxation, 15 N.J.Tax 338, 355 (Tax 1995); ADVO, Inc. v. Director, Div. of Taxation, 25 N.J.Tax 504 (Tax 2010).
A Judgment reinstating the exemption and abatement for the subject property will be entered by the Tax Court Clerk. The Judgment will resolve all claims for tax years 2006 and 2007. Because the amount of the assessment on the subject property remains relevant for tax year 2008, in which a partial abatement applies, the city’s counterclaim for tax year 2008 remains viable. An Order implementing the court’s decision is enclosed.