NOT FOR PUBLICATION WITHOUT APPROVAL OF
THE TAX COURT COMMITTEE ON OPINIONS

## TAX COURT OF NEW JERSEY



**Mala Sundar**
 **JUDGE**

R.J. Hughes Justice Complex
P.O. Box 975
25 Market Street
Trenton, New Jersey 08625
Telephone (609) 943-4761
TeleFax:   (609) 984-0805
taxcourttrenton2@judiciary.state.nj.us

August 24, 2017

**BY ELECTRONIC MAIL**
Caitlin Oliveira, Pro Se
Lawrence Harbor, New Jersey 08816

Frederick L. Rubenstein, Esq.
James P. Nolan & Associates, L.L.C.
61 Green Street
Woodbridge, New Jersey 07095

> Re:     Oliveira v Township of Edison
>           Block 1145, Lot 9
>           Docket No. 000490-2017

Dear Counsel and Ms. Oliveira:

This is the court's opinion with respect to the plaintiff's summary judgment motion seeking to cancel defendant's assessor's added partial assessment for a portion of tax year 2016 because such type of assessment has never been legally recognized. Plaintiff alternatively argues that if such type of assessment is legally allowed, then the added partial assessment is improper because the above captioned property ("Subject") was not "substantially completed" and ready for its intended use. Defendant ("Township") opposed the motion claiming there were material facts in genuine dispute as to whether the Subject was substantially completed.

For the reasons stated below, the court holds that the Township's imposition of an added partial assessment was lawful. There is however a materially disputed issue as to whether the

*

discrete areas on the first floor (i.e., the lack of flooring over the existing concrete floors in the foyer, main hallway and dining room), and the exterior (gutters and landings) render the first floor as not being substantially complete. Therefore, the court denies plaintiff's summary judgment motion. It will hold a hearing as to whether the first floor was substantially complete, and thereafter, hold a trial on valuation.

## FACTS AND PROCEDURAL HISTORY

Plaintiff owns the Subject, which is a residential lot. The lot was classified and taxed as vacant land for tax year 2016. Plaintiff is in the process of constructing a two-story single family home on the Subject, which also includes a one-car attached garage, pursuant to a single permit issued by the Township. Sketch plans showed the first floor having a family room, dining room, kitchen, laundry room (with a closet), and the fifth bedroom with closets, and a full bath. The second floor is to have four bedrooms and two full baths.

On July 18, 2016, plaintiff applied for, and received a temporary certificate of occupancy ("TCO"). The TCO was valid for three months. Per plaintiff, the Township issues renewable TCO's for three-month periods. On the TCO, the "description of the work" on the Subject was stated as "demo of existing structure to slab and construct addition and interior alteration." The TCO was subject to the condition "Occupancy of 1st Floor Only and No Use of Garage." If that condition was not met by 10/16/2016, then plaintiff would be subject to fines or required to vacate. In conjunction with the TCO, the Township also issued plaintiff approvals for building, electrical, fire protection, and plumbing. Each approval noted "TCO 1st Floor." The approval for building also noted that "garage not for parking car." Those approvals were issued after due inspection by the respective Township officials, per plaintiff.

2

Plaintiff's statement of undisputed material facts alleged that the several rooms on the first floor required minor work but were essentially completed. However, the entrance foyer and hallway had unfinished concrete floors. She also claimed that the flooring was not yet installed in the dining room on the first floor since it is being used as a "staging and storage area for building materials and tools." She stated, and the Township agreed, that the second floor of the house was yet to be finished in several major aspects.

On August 16, 2016, a field inspector for the Township's assessor's office (hereinafter "field inspector"), who is a certified real estate appraiser, performed an inspection (including the interior) of the Subject. His notes indicated that the flooring in the foyer and dining room was "to be installed." The other rooms on the first floor (including the bathroom), and HVAC were "complete," as was the exterior. He also noted that the various rooms on the second floor were incomplete due to "unfinished drywalls [and plywood floorings] throughout bedrooms, closets, hallways," however, the "bathtub [and] Jacuzzi tub [were] installed." He noted that the garage's drywalls had yet to be taped. He also noted "see photos" in connection with his inspection as to the Subject's construction condition.

The Township then issued plaintiff an added partial assessment of $82,200 (prorated for five months August-December 2016 at $34,250) in October 2016. The property record card indicated that final value of the Subject was $191,800 (allocated $74,600 to land and $117,200 to improvement). The card also indicated a partial assessment of $156,800 (allocated $74,600 to land and $82,200 to improvement).

Upon plaintiff's query for clarification of the assessment, the field inspector responded that the "total improvement value upon completion will be $117,200 and 'as of right now' the improvement value is $82,200." He further explained the cost approach used to derive the

assessment, noted that the market approach was also used (listing six comparables), and provided certain other clarifications.[1] The assessor also confirmed to plaintiff that the added assessment was issued "on the portion of the structure that was substantially completed – the part that received the" TCO.[2]

On November 30, 2016, plaintiff filed an appeal to the Middlesex County Board of Taxation ("County Board") challenging the $82,200 added partial assessment for the improvement. She reasoned that the Subject was "yet to be substantially completed and therefore cannot be subject to 2016 added assessment."

By judgment dated December 16, 2016, the County Board affirmed the assessment using judgment code 14A. That code stands for "added assessment affirmed – as filed by assessor."

Plaintiff then filed a timely complaint to this court. The standard form complaint alleged that she was contesting the County Board's action "on the ground that the assessment . . . is . . . in excess of the true or assessable value of the property." On the supplemental information sheet, plaintiff alleged that since the "structure was not substantially completed during the 2016 tax year [it] was erroneously issued a 2016 Added Assessment." She noted that the assessor had deemed the Subject to be "at a mere 70% completion as of October 1, 2016," and reliance on the TCO was improper since the TCO only covered "less than 50% of the structure's square footage." She also alleged that since added assessments can only be issued upon substantial completion of a structure as a whole, with no such "provision for partial completion or substantial partial completion of a

---

[1] Plaintiff made a similar query to the Township's assessor regarding the partial assessment imposed for tax year 2017 ($156,800) which she had appealed to the County Board. The assessor responded that since her "opinion of value" had not changed, the "2017 present value [was] consistent with the numbers derived at the end of 2016." The assessor also noted "the determination of the partial value was a value as complete and a conservative estimate of what was needed for the property to be deemed substantially complete was subtracted from the 'as complete' value."

[2] The Township admits that during the County Board hearing on plaintiff's appeal for tax year 2017 appeal, the assessor had stated that the 2016 added assessment was triggered due to issuance of the TCO.

portion of a structure," the 2016 added partial assessment was invalid. She noted that "[p]roperties may only be subject to Added Assessment for the year of completion. Properties still under construction on October 1st of the pretax year are to be issued an annual partial assessment for the following tax year."

Plaintiff then moved for summary judgment. The Township opposed the same on grounds of disputed facts material to the motion, namely, whether or not a portion of the Subject was substantially complete. Per the Township, it needed to depose plaintiff and elicit the field inspector's and/or assessor's testimony in this regard.

During oral argument of the motion, plaintiff stated that she did occupy the first floor for a brief period when the TCO was effective. She stated that she decided not to reside there due to the dust and construction debris. She also noted that she chose not to renew the TCO. Presently, there is no TCO or a certificate of occupancy ("CO").

**ANALYSIS**

An added assessment is intended to capture an increase in value due to the completion of a building/structure, or an addition or improvement thereto, after the October 1 valuation date but either by the end of the pre-tax year or during January to October of the tax year. The purpose of this statute "is to permit the taxation of real property which becomes taxable during the year following the assessment date of October 1 in order to avoid having properties escape taxation until the next assessment date arrives." Snyder v. Borough of South Plainfield, 1 N.J. Tax 3, 7 (Tax 1980).

For a structure that has been erected, added to, or improved after the October 1 valuation date and before the January 1 start of the tax year, an added assessment will be imposed for the entire subsequent tax year. N.J.S.A. 54:4-63.2. An amount will also be imposed for a portion of

the pre-tax year of completion from the first day of the month following completion through December 31. Ibid.

If a structure has been erected, added to, or improved after the October 1 assessment date, and between January 1 and October 1 of the tax year, the added assessment computation differs. N.J.S.A. 54:4-63.3. The assessor must first determine the taxable value of the improvements as of the first of the month following completion, and then assess the amount in excess of the assessment made as of the preceding October 1 date. Ibid. The added assessment is prorated by multiplying the excess value with the whole months remaining in the tax year, divided by 12. Ibid.

A structure is "completed" when it is "substantially ready for the use for which it was intended." N.J.S.A. 54:4-63.1. If construction has reached the point when it cannot be concluded that there is an economically viable structure, the property is not substantially complete. Beranto Towers v. City of Passaic, 1 N.J. Tax 344 (Tax 1980). Under a functionality test, if the building could be used for its actual intended purposes, then it is substantially complete. Litton Business Sys., Inc. v. Borough of Morris Plains, 8 N.J. Tax 520 (Tax 1986), aff'd, 9 N.J. Tax 651 (App. Div. 1988).[3]

The court has recognized the validity of imposing partial assessments as of the assessment date. See In re New York State Realty & Terminal Co., 21 N.J. 90, 99 (1956) ("placing a construction value on a partially completed structure as of the annual assessment date" does not bar an assessor from subsequently imposing an added or omitted assessment); Texas Eastern Transmission Corp. v. Township of East Amwell, 82 N.J. Super. 593, 596 n.1 (App. Div. 1964)

---

[3] However, an added assessment is generally not warranted for "improvements" such as laying of utility or sewer lines because that term is absent from the added assessment statutes and is not necessarily equivalent to the term "structure." Howell Township v. Monmouth County Board of Taxation, 18 N.J. Tax 149 (Tax 1999).

("a structure in process of construction on" the assessment date "is assessable for its then construction value for the following year"). As this court has previously stated:

> All taxable real property must be valued as of October 1 of the pre-tax year. N.J.S.A. 54:4-23. In the event that improvements are in the process of construction on October 1, the assessment is based upon the proportion of the final value which is present on the assessment date and is usually referred to as a partial assessment.
>
> [Snyder, supra, 1 N.J. Tax at 7 (citation omitted).]

Plaintiff agrees that added assessments are statutorily authorized. She also concedes that on October 1 of each pretax year a partial assessment is permissible on the Subject until completion of the house on the same. She however argues that (1) a partial assessment can only be imposed as of the October 1 valuation date; and (2) an added assessment can only be imposed when an entire structure is substantially complete (whether or not a CO has been issued). She points out that there is no precedent validating an added partial assessment on a portion of a structure simply because a TCO was issued for that portion.

Plaintiff is correct that no reported cases specifically reference or address an "added partial assessment." However, this does not mean that imposition of such type of assessment is invalid or illegal. For instance, although there is no statute addressing the imposition of a partial assessment, courts have upheld the same. In re New York State Realty, supra. Similarly, there is no statutory reference to the imposition of "omitted partial assessments." Yet courts have referenced and upheld the same. See Snyder, supra, 1 N.J. Tax at 5, 6, 9-11, where the court implicitly upheld the county board's order to impose "omitted assessments (partial)" when it ruled that the Freeze Act did not apply to vacate the same. See also Boardwalk Properties v. City of Atlantic City, 5 N.J. Tax 192, 197-98 (Tax 1983), where this court held that "the propriety of partial assessments" was upheld by the higher courts in the N.Y. State Realty and Texas Eastern

cases. Thus, "there is no basis for denying to the municipality the right to place an omitted assessment on its books for partially completed construction." Ibid. The court concluded that "a partial assessment not placed on the assessment rolls as of October 1 may thereafter be made as an omitted assessment." Id. at 198-99.

These cases permit a complementary conclusion that an assessor can validly place an added partial assessment because the underlying basis/reason is the same, viz., all taxable property must be assessed and taxed so that they equally bear the tax burdens. Id. at 196. As long as the structure for which that added assessment is imposed complies with the statutory requirement that it be substantially completed, the imposition of a partial added assessment is entirely within the authority given to, and the responsibility of, an assessor.

Plaintiff's contention that there are simply no cases permitting an assessment to be placed on a "portion" of a structure even if that portion is substantially complete is unpersuasive. In Texas Eastern, supra, the Appellate Division rejected an analogous argument. There, the taxing district imposed an added assessment on a pipeline, seven miles of which lay in the taxing district, with the remaining portion in other municipalities, at a point in time when only 79% of the entire 41-mile pipe line was "laid and backfilled," with other procedures, such as testing, cleaning and the like, yet to be completed. 82 N.J. Super. at 596. While the portion lying in the defendant municipality had been laid, backfilled and tested, water removal and pipe cleaning/drying had to be completed because it was "more convenient for the company to do those finishing operations all at one time for the whole 41-mile section." Id. at 596-97. The taxpayer argued that the pipeline "as a whole . . . was far from ready to be used by that date for its intended purpose of transmission of gas," and the portion lying in the taxing district "was to constitute an integral functional portion"

of that whole, thus, was not "'substantially' or even in any sense, ready for" its intended use.  Id. at 597.

The Appellate Division rejected this argument as "misapprehend[ing] both the underlying purpose of the Added Assessment Act and the basic philosophy of ad valorem taxation."  Ibid. The court held as follows:

> Assuming for the moment . . . that the portion of line . . .  was physically completed by October 1 to the degree that it was substantially ready to be incorporated into the line as a whole when the latter should be ready to receive it as an operating segment, . . . this is all that is required to meet the intent of the statute in respect of the assessability of the portion of the line situate in the taxing district . . . .  Ad valorem taxation is imposed in respect of the physical presence of property in a taxing district, by reason of which it is in presumptive enjoyment of the protective and other benefits of local government.  And the statement appended to the bill which was enacted in 1941 as the Added Assessment Act evinces the same philosophy in relation to construction newly completed which would otherwise escape taxation.  The general policy of our taxing statutes is that all property within the jurisdiction of the State should be taxed unless expressly exempted . . . .
>
> Thus, if as of October 1 the portion of the pipe line . . . was itself substantially ready for incorporation into the pipe line as an entirety and for use as such, and was merely awaiting the readying of the line outside that municipality to receive it as part of the total operating mechanism, in the meantime fully enjoying the benefits of local government, there is no justification for delaying the taxation of the . . . portion in the interim. This, we take it, accords with the statutory intent in relation to a situation of this kind.
>
> [Id. at 597-98 (citation omitted).]

The court noted that the Legislature's use of the word "substantially" means that there is no "require[ment]" for "100% completion or readiness for use."  Id. at 598.  Based on the evidence before it, the court concluded that the pipeline was substantially ready for its intended use as of the assessment date.  Ibid.

Here also, the first floor portion of the house was deemed substantially complete by the field inspector after a personal inspection and because of the TCO.  The Township's code officials

deemed the first floor to be safe, in all respects, for occupancy. The first floor was ready for its intended use as a residence with fully functional utilities in place. Plaintiff was legally permitted to, and did in fact, occupy, reside in, and use that portion. That she chose not to reside there after a brief period is of no moment. That she left a portion of the flooring unfinished was her choice (prevent damage due to continued construction on the second floor), and does not render the issuance of the TCO a fiction, or the determination of the assessor's office (after inspection) that the first floor was substantially complete a fallacy. The concrete slabs in the foyer and dining room existed when the TCO was issued. The approvals for occupancy factored in this condition. Thus, the TCO and the field inspector (after inspection) deemed the first floor safe for residence and occupancy, its intended use.

Plaintiff's reliance on Van Orden v. Township of Wyckoff, 22 N.J. Tax 31 (Tax 2005), that an assessment cannot be imposed on a portion of an improvement (there, a deck), thus, here, cannot be on the first floor portion of the Subject is unpersuasive. That case is inapposite because it did not involve an added partial assessment. In any event, the court upheld the omitted added assessment placed for the value of a deck constructed after the October 1 assessment date. In doing so, it rejected the taxpayers' arguments that the amount of the added assessment should not be more than the increase in value due to addition of the deck. Id. at 37-38. This is because the assessor had properly calculated the added assessment (and pro-rated the same) by first determining the value of the entire structure not just of the addition. Id. at 38.[4] Here, that is what

---

[4] The court relied upon New Jersey Foreign Trade Zone Venture v. Township of Mount Olive, 10 N.J. Tax 330 (Tax 1989), aff'd, 242 N.J. Super. 170 (App. Div. 1990). In that case, neither expert witness addressed, thus, proved land value in the taxpayer's challenge to an added assessment. The court held that the added assessment statute requires the court "determine the taxable value of the property as completed (land and improvements combined) and then subtract the existing assessment (making any necessary ratio adjustments)." 10 N.J. Tax at 333. Since the parties had provided proof of only the improvement's value, the court affirmed the assessment. Id. at 335. No such issue is present in this case since the assessor considered the assessment of the property as a whole (land and improvements).

the assessor also did. Whether his valuation is reasonable or otherwise is to be determined in a valuation trial, not this motion.

Plaintiff contends that the TCO cannot be the basis for a conclusion that the first floor was substantially complete and ready for its intended use pursuant to the holdings in Beranto, supra, and Lowe's Home Ctr., Inc. v. City of Millville, 25 N.J. Tax 591 (Tax 2010).

In Beranto, supra, the court held that the "qualification of a building for a [CO] is not per se determinative of the building's readiness for occupancy" for purposes of the added assessment statute. 1 N.J. Tax at 349. This is because TCOs may be given "if the building (or affected parts thereof) may be occupied" safely. Id. at 350. Consequently, even a "failure to qualify for" a CO is "only one of the several circumstances to be considered." Id. at 349. The court then found that because only 15 of the projected 120 apartments were habitable, of which only 9 were actually occupied, and which 9 disqualified for a CO due to unsafe conditions revealed after fire and building safety inspections, the building was not substantially complete.

In Lowe's, supra, the issue was whether a tax abatement was improperly rescinded one year after its grant because the taxpayer allegedly filed an application for the same four days late. The taxing district argued that the start of the time limit was the CO date. 25 N.J. Tax at 597. The court disagreed because a CO "is not an official determination that the structure is substantially ready for its intended use" but is "a declaration that the building is safe for occupancy and is in compliance with the building code and local ordinances." Id. at 600. Thus, relying purely upon a CO, with "no evidence that the assessor inspected the property or considered any fact other than the issuance of the [CO]" in determining that the property was complete under the abatement statute, was wrong. Ibid.

11

Here, unlike in Beranto, supra, the TCO deemed the first floor safe for its intended use of residency and occupancy. That the TCO expired in October of 2016 does not require a conclusion that the first floor became unsafe for use and occupancy. Rather, plaintiff voluntarily chose not to renew the TCO. Additionally, there is no implication of the "economic viability" because the Subject is a residential house, not a commercial apartment building. Plaintiff's speculation that she could not rent the first floor alone is therefore irrelevant (and incredible since she procured the TCO to reside and occupy that portion, and did so, even if for a short period).

Lowe's, supra, does not apply because the issue there was the timeliness of an abatement claim. Even if the portion relative to the CO findings are deemed persuasive, here unlike in Lowe's, the field inspector, who is a licensed real estate appraiser, performed a detailed personal inspection taking photographs and notes on his personal observations as to the entire structure. That his inspection was triggered due to or after the issuance of the TCO does not invalidate the added partial assessment. See e.g. Snyder, supra, 1 N.J. Tax at 7-8 ("[a]ssessors commonly used the issuance of a [CO] as an indication of when an improvement is ready for use"). This is especially because he based his consequent determination that the first floor was substantially complete primarily on his personal and detailed inspection, thus, not mechanically on the TCO's issuance.[5] This inspection and subsequent imposition of the added partial assessment fully comports with an assessor's statutory duty to independently determine the fair market value of all taxable real properties.

---

[5] Equally irrelevant is the Township's admission, during the County Tax Board hearing of the 2017 appeal, that the assessor stated that the 2016 added assessment was triggered due to issuance of the TCO. The 2017 appeal is not before this court. In any event, this does not obviate the fact of the field inspector's detailed personal inspection of the entire Subject in 2016 prior to imposing the added partial assessment for 2016.

12

Summary judgment can be granted if "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c). An issue of fact is genuine "only if, considering the burden of persuasion at trial, the evidence submitted by the parties on the motion, together with all legitimate inferences therefrom favoring the non-moving party, would require submission of the issue to the trier of fact." Ibid. Although the evidence is to be viewed most favorably toward the non-moving party, summary judgment may not be denied simply because the non-movant demonstrates the existence of a disputed fact. Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540-41 (1995). Rather, denial is appropriate only where the evidence is of such a quality and quantity that reasonable minds could return a finding favorable to the party opposing the motion. Id. at 534, 540.

Many of the so-called disputed material facts by the Township were really immaterial. Thus, its assertion that the Subject was assessed as vacant land from 2011 not 2012, is immaterial to the 2016 added assessment. Its labeling the Subject as an "addition to an existing slab" instead of plaintiff's version of a "new single family structure" is similarly immaterial since it plays no role in determining the validity of the added partial assessment. Its denial of the "quantity" of photos taken by the field inspector is also immaterial since it is undisputed that the field inspector took photos of the Subject.

The reasons for the Township's denial of paragraph 7 of plaintiff's statement of undisputed material facts is unclear. That paragraph recited a description of the second floor and the first floor. During oral argument, the Township conceded that the second floor was incomplete and was not subject of the added partial assessment. As to the first floor, plaintiff stated that "several

individual rooms [on the first floor], while still in need of minor work, were essentially completed (kitchen, laundry room, first floor bathroom, and first floor office)." This assertion agrees with the Township's basis for the added partial assessment. Its denial of plaintiff's assertion that the front entrance foyer, hallway and dining room had concrete floors is meaningless since these facts were acknowledged by the field inspector, thus, are not facts in genuine dispute.

The only issue of any materiality is whether the lack of the flooring on the foyer and main entrance, the alleged lack of gutters, walkway to front entrance door, and landings in front of the four exterior doors, render the first floor as not substantially complete for purposes of the added partial assessment. In addition, since the field inspector's notes stated the "exterior" was "complete," it raises a disputed fact. Therefore, the court will hold a hearing as to whether the alleged incompletion of these discrete areas render the first floor substantially incomplete.

## CONCLUSION

For the aforementioned reasons, the court holds that the Township had the right to impose an added partial assessment. However, since there is a genuine issue of material fact as to whether the discrete areas on the first floor (essentially, the lack of flooring over the existing the concrete floors) and the exterior (gutters and landings) render the first floor as not being substantially complete, the court denies plaintiff's summary judgment motion.

Very truly yours,

Mala Sundar, J.T.C.

14