NOT FOR PUBLICATION WITHOUT APPROVAL OF
THE TAX COURT COMMITTEE ON OPINIONS

### TAX COURT OF NEW JERSEY



**Patrick DeAlmeida**
 **Presiding Judge**

R.J. Hughes Justice Complex
P.O. Box 975
25 Market Street
Trenton, New Jersey 08625-0975
(609) 292-8108 Fax: (609) 984-0805

July 5, 2017

Brian A. Pelloni, Esq.
Hornstine & Pelloni, LLC
1500 Walnut Street, Suite 300
Philadelphia, Pennsylvania 19102

Michelle Banks-Spearman
Assistant City Attorney
City of Camden
Office of the City Attorney
City Hall, Suite 419
P.O. Box 95120
Camden, New Jersey 08101-5120

<div style="margin-left:2em">

Re:    Camden Day Nursery Association v. City of Camden
Docket No. 012151-2015

Broadway Family Center v. City of Camden
Docket No. 012152-2015

Mi Casita Day Care Center, Inc. v. City of Camden
Docket No. 012171-2015

</div>

Dear Counsel:

This letter constitutes the court's opinion with respect to whether it has jurisdiction to review the denial of plaintiffs' local property tax exemption claims for tax year 2014 and with respect to plaintiffs' motion for the award of attorney's fees pursuant to R. 1:10-3. For the reasons

stated more fully below, the court concludes that plaintiffs have not established jurisdiction in this court to review the denial of their exemption claims for tax year 2014. In addition, the court denies plaintiffs' request for the award of attorney's fees.

<p style="text-align:center">I. Findings of Fact and Procedural History</p>

The following findings of fact are based on the certifications and exhibits submitted by the parties on their cross-motions. R. 1:6-2(f).

Plaintiffs Camden Day Nursery Association, Broadway Family Center, and Mi Casita Day Care Center, Inc. are non-profit corporations that own real property in defendant City of Camden. Each plaintiff operates a day care center for children on its property. For a number of years prior to 2011, the property of each plaintiff was listed as exempt from local property tax in the records of the municipal tax assessor.

On December 7, 2010, the municipal tax assessor issued a letter to each of the plaintiffs stating, in relevant part, as follows:

> The Camden County Tax Administrator has made a determination that your day care facility is not eligible for exemption of real estate taxes.
>
> As a consequence, she has ordered me to notify your organization that your building will be taxed beginning January 1, 2011.
>
> You have a right to appeal this decision by filing a tax appeal with the Camden County Tax Board on or before April 1, 2011. The appeal forms can be obtained at the Camden County Board of Taxation Office located on the 7th Floor of City Hall, 520 Market Street, Camden, New Jersey 08101.
>
> If you need assistance in completing the form please call the above stated number and our office will be glad to assist you in completing the form.

<div style="text-align:center">2</div>

The exact precipitant of the assessor's letters is not clear. Similar letters were sent in 2010 to many non-profit entities that own real property in Camden City that had previously been treated as tax exempt. This resulted in the filing of many Complaints challenging the exemption revocations. In none of those cases has a record been developed with respect to the true origin of the revocations. During oral argument in this case defendant's counsel stated that the revocations were the result of an audit of the assessor's files by the Division of Taxation. There is no evidence in the motion record corroborating this representation. In an unrelated matter, the Camden County Tax Administrator testified that despite the assertion to the contrary in the assessor's letter, the Administrator had not ordered the revocation of exemptions in Camden City for tax year 2011.

Regardless of the assessor's motivations, plaintiffs Broadway Family Center and Mi Casita Day Care Center, Inc. filed timely appeals with the county board of taxation challenging the denial of an exemption on their respective parcels for tax year 2011. They each thereafter filed a timely appeal with this court challenging the respective county board Judgment affirming the denial of an exemption for tax year 2011. When the tax assessor maintained the denial of an exemption for tax years 2012 and 2013, those plaintiffs filed timely appeals with both the county board of taxation and this court with respect to those tax years.

Plaintiff Camden Day Nursery Association did not file an appeal with respect to tax year 2011. It did, however, file timely appeals with both the county board of taxation and this court challenging the denial of an exemption for its property for tax years 2012 and 2013. The same attorney represented each of the plaintiffs in the appeals pending before this court.

The municipal tax assessor maintained the denial of an exemption on each of the plaintiffs' property for tax year 2014.

3

On March 4, 2014, each plaintiff filed a motion for summary judgment in the pending appeals for tax year 2011 (two plaintiffs), and tax years 2012 and 2013 (three plaintiffs). Plaintiffs also moved for the award of attorney's fees pursuant to R. 1:4-8. The motions were returnable on March 28, 2014, prior to the April 1, 2014 filing deadline for tax year 2014.

On March 14, 2014, the City's attorney sent plaintiffs' attorney a letter that provided as follows:

> As we discussed yesterday please accept this letter as the City's formal request for a two week adjournment of the hearing on your motion for summary judgment in the above matters currently scheduled for March 28, 2014. The City recognizes that the deadline to appeal your client's 2014 tax exemption is April 1st and understands that your client would like to avoid the cost of filing appeals for the 2014 (sic). The City is willing to enter into a consent order agreeing to apply whatever determination the court makes for the pending tax appeals to the 2014 tax year.

Plaintiffs' attorney asserts that he did not receive the March 14, 2014 letter from defendant's counsel until March 18, 2014, the day after an extensive e-mail exchange between counsel and the court's clerk on March 17, 2014. The motion record, however, contains a March 14, 2014 email from defendant's counsel to plaintiffs' counsel, which provides as follows:

> Attached is my request for an adjournment. We tried to fax it to you however your fax is busy. Please advise whether it is ok to represent that you consent to a two week adjournment conditioned upon the City applying any ruling to the 2014 tax year?

The court concludes that plaintiffs' counsel received the March 14, 2014 letter prior on the March 17, 2014 exchange of emails, all of which are predicated on the assertion that counsel for the parties consulted with each other prior to the submission of defendant's adjournment request to the court.

4

On March 17, 2014, the City's attorney sent an email to the court's law clerk, on which plaintiffs' attorney was copied. The email provided as follows:

> Plaintiff (sic) has filed summary judgment motions in the above referenced tax appeals which are scheduled to be heard on March 28, 2014. I am requesting a two week adjournment to permit me sufficient time to prepare the City's response. I have consulted with [plaintiffs' counsel] and he has consented to the same with the condition that the City agree to the Court's determination to the 2014 year (sic) without his clients having to file tax appeals for 2014. The (sic) will agree to apply the Court's decision to the 2014 assessment.

Approximately a half hour later, plaintiffs' counsel sent an email to the court's law clerk, on which defendant's counsel was copied. That email provided as follows:

> [Defendant's counsel's] representations are partially correct. My consent to her request is also contingent on Plaintiffs not having to file Local Tax Appeals for this year until after the Motion is decided.
>
> As you may know, those local appeals are due on April 1, 2014. Obviously, they may or may not need to file depending on the result of the Summary Judgment Motions. If the Motions are postponed until after the filing deadline, then my clients should be permitted to file their local appeals out of time, if necessary, after the Motions are decided.

Approximately a half hour later, defendant's counsel sent an email to the court's law clerk, on which plaintiffs' counsel was copied. That email provided, in relevant part, as follows:

> In my prior email I stated that the City would be willing to waive the April 1, 2014 (sic). We just consulted with the County Board of Taxation and they have informed us that we cannot waive the April 1st deadline to file 2014 taxes (sic). As such [plaintiffs' counsel] has withdrawn his consent. I am therefore requesting a conference call with the Judge to discuss this matter. [Plaintiffs' counsel] has indicated that he is available all of today as am I.

The court held a telephone conference with counsel later that day, March 17, 2014, during a break in the trial of another matter. The telephone conference was not recorded. According to

5

defendant's counsel, the issue of the April 1, 2014 filing deadline was addressed during the March 17, 2014 conference call. She certified as follows:

> During said telephone conference Judge DeAlmeida questioned how Plaintiff could avoid filing 2014 tax appeals when the 2014 tax assessments were already on the books and questioned whether judgments entered for the pending appeals could affect the 2014 tax assessments, if no appeals were pending for 2014.
>
> During that telephone conference Judge DeAlmeida confirmed that the appeal deadline could not be extended.

Plaintiffs' counsel does not dispute this description of what transpired during the March 17, 2014 telephone conference or that the conference was held prior to the April 1, 2014 filing deadline for tax year 2014. The court's notes from the conference indicate that defendant's request for an adjournment was granted. Defendant was to file a brief on or before April 1, 2014 and plaintiffs' reply, if any, was to be filed on April 7, 2014.

Counsel appeared before the court on April 11, 2014, after the April 1, 2014 filing deadline, for oral argument on plaintiffs' summary judgment motions and defendant's cross-motions for summary judgment. After hearing oral argument from counsel, the court reserved decision on the cross-motions to permit plaintiffs to submit further information with respect to the salary schedule of plaintiffs' officers and employees, the fees paid by the students at plaintiffs' day care centers, and a breakdown of the number of students at the facilities covered by plaintiffs' contracts with the Camden Board of Education and the State Division of Family Development. The court gave plaintiffs 30 days to make the necessary submissions. The court also reserved decision on plaintiffs' motion for the award of attorney's fees.

The question of whether plaintiffs had filed appeals for tax year 2014 was addressed on the record near the conclusion of the April 11, 2014 proceeding. The digital recording of the hearing provides, in relevant part:

> COURT: Are there 2014 appeals?
>
> PLAINTIFFS' COUNSEL: There are not Your Honor. If Your Honor will recall there was a discussion on the record between counsel and Your Honor regarding entering a Consent Order or somehow retro (sic) or applying the decision of this court to 2014. After that time it was represented to us that the City would agree to apply whatever the determination was of the court to 2014 in the hopes that the taxpayers could save the costs of filing those 2014 appeals because this has been going on. This will be the fourth year.
>
> COURT: Right.
>
> PLAINTIFFS' COUNSEL: So it was our position that it was going to be applied. Right before we started the hearing today it was represented to me that that is not the case, that the City has no intention of applying that decision and to the extent that it becomes an issue we'll file whatever we have to with the court to deal with that.
>
> COURT: [Defendant's counsel,] the exemptions were denied for 2014?
>
> DEFENDANT'S COUNSEL: The, at the time of the, at the time of our conference a few weeks ago when I was requesting the extension to submit my reply, they had already been listed as taxable, Your Honor, and based on our conversation at the conference, it was my understanding that we could not change 2014 unless they filed their 2014 appeals. Yes, prior I did write letters to Mr. (sic) and emails to [Plaintiffs' Counsel] indicating that we could apply the status or that we could enter into a Consent Order or to extend the time for them to file. But, after talking with you, Your Honor, it was my understanding that those ideas were shut down because they weren't permiss (sic) legally permissible. Therefore, I.
>
> COURT: This was before April 1st?
>
> DEFENDANT'S COUNSEL: Yes. Therefore, I believe that [Plaintiffs' counsel] was going to file because one of the reasons he

7

argued about against granting the two-week extension was that he wanted to avoid his clients having to file.

COURT:  This is starting to sound familiar.

DEFENDANT'S COUNSEL:  And then you asked "well, how is that going to help you?  Don't you still have to file in order to affect your 2014?"

COURT:  That sounds like something I would say.

PLAINTIFFS' COUNSEL:  It was Your Honor.

DEFENDANT'S COUNSEL:  It was my understanding that the 2014's would have to be filed in order for the City to apply them.  That we don't have legal authority to change that.

COURT:  Alright.  [Plaintiffs' counsel?]

PLAINTIFFS' COUNSEL:  Your Honor, I have I have (sic) the letter, I don't have the emails that were sent.  Or I believe it was a single email that was sent after that conversation with the court.  And again, I believe it was pretty clear in that email that the City had agreed or suggested that it wasn't necessary to file because they would agree to apply that exemption.

COURT:  And, so, you didn't file 2014's?

PLAINTIFFS' COUNSEL:  We didn't Your Honor based upon those representations.

DEFENDANT'S COUNSEL:  But those were before the conference call.

COURT:  It might be wise to file, attempt to file, them late, and um.

PLAINTIFFS' COUNSEL:  We will Your Honor.

COURT:  And then if.

PLAINTIFFS' COUNSEL:  Based upon the representation today, absolutely we will file.

COURT:  They have to be filed with the county board?  The assessments are below a million?

8

PLAINTIFFS' COUNSEL:  That's correct.

COURT:  So, if the county board.

PLAINTIFFS' COUNSEL:  At least one of them is over, but procedurally we filed all at the same time.

COURT:  It might be wise to file them late and make an argument about leave to file late and if that's denied, you can make an argument with the court based upon what transpired at that proceeding.

PLAINTIFFS' COUNSEL:  Thank you Your Honor.

COURT:  Um, it's not that late.  It's only the 11th, so it may be worth doing.  I hope I didn't mislead anyone at that proceeding.  Um.  I don't recall exactly.  I'll go back and listen to the tape.  That was during the trial call, correct?  With a bunch of other.

BOTH COUNSEL:  No.

DEFENDANT'S COUNSEL:  It was a separate conference.

PLAINTIFFS' COUNSEL:  It was a separate telephone conference.

COURT:  Oh, a telephone conference.  Oh, alright.  I thought that you were here that day.  Alright.  Um.  Sometime in March, that was?

DEFENDANT'S COUNSEL:  That was.

PLAINTIFFS' COUNSEL:  I believe, yes, it was Your Honor.

DEFENDANT'S COUNSEL:  Yes.

COURT:  Then I'll look, I'll listen to that tape, but [Plaintiffs' counsel] you might want to take whatever steps are in your clients' interests to protect 2014.

PLAINTIFFS' COUNSEL:  We will do that Your Honor.

COURT:  And, um.

9

PLAINTIFFS' COUNSEL: And to the, just to put, just so that the City is on notice at this point to the extent that those extra steps are taken and there is evidence to show that the City had agreed to waive that filing we will be proceeding for fees at that point. I know that we have asked for that at every single hearing, but to the extent that this continues to be an issue, I want it very clear on the record that we intend to do that.

COURT: I understand.

As indicated above, the March 17, 2014 telephone conference was not recorded. As a result, the court could not verify what was said during the telephone conference. Plaintiffs' counsel, however, does not dispute the account offered by defendant's counsel, an account the court finds entirely credible, as it has always been this court's practice to remind counsel in all local property cases of the need to file an appeal for each tax year, particularly in the weeks leading up to a filing deadline.

It was not until May 1, 2014, that plaintiffs attempted to file Petitions of Appeal with the Camden County Board of Taxation with respect to the denial of their exemption claims for tax year 2014.

Plaintiffs' counsel certified that he never received a response from the county board of taxation. He concedes that he took no steps to ascertain whether the board of taxation received the appeals or had adjudicated his clients' claims. Nor, apparently, did he inquire with respect to the four checks from his law firm's operating account that he enclosed with the appeals to pay for the county board filing fees.

In a certification submitted by the City in opposition to plaintiffs' present motion, the Camden County Tax Administrator certified that plaintiffs' Notices of Appeals were received by the county board of taxation on May 2, 2014. She attached to her certification a May 7, 2014 letter from the County Tax Administrator's office to plaintiffs' counsel that provided as follows:

10

Dear [Plaintiffs' counsel]:

Please find enclosed multible (sic) petition of appeals along with Chk #1477 for $25.00, check #1474 for $25.00, check #1475 for $100.00 and check #1473 for $100.00.

We received the appeals for the properties in Camden City. I am very sorry to have to inform you that I am unable to process your appeals. The law reads that your appeal must be received (not merely postmarked) by the Tax Board on or before April 1 of the year. It is also referenced in the first line of instructions on the form.

The only alternative that I can offer you at this time is to inform you that you can file next year after the assessment cards go out in February. When you receive your assessment card for 2015 you may file but please make sure that it is in our office by the April 1, 2015 deadline.

If you should have any questions please feel free to contact me at 856-225-5238.

Plaintiffs' counsel denies having received the May 7, 2014 letter rejecting the tax year 2014 Petitions of Appeal as untimely. He offered no explanation, however, for not having made an inquiry to the board of taxation when he did not receive a response to the Petitions of Appeal. Nor did he explain how it apparently went unnoticed that four checks on his law firm's operating account for filing fees at the county board were not deposited and, as far as plaintiffs' counsel was aware, also were not returned by the county board.

It was not until August 13, 2015, more than a year and three months after the filing of the Petitions of Appeal, that plaintiffs raised allegations before this court concerning the denial of exemptions on their properties for tax year 2014. Plaintiffs' allegations concerning tax year 2014 are contained in their Complaints challenging the denial of an exemption on their properties for tax year 2015. The Complaints allege that plaintiffs' filed Petitions of Appeal with the county

11

board of taxation with respect to tax year 2014 but "[t]o date, no hearing has ever been scheduled for the 2014 local appeals, and no decision has been received."

Plaintiffs thereafter filed timely appeals with the county board of taxation and this court from the denial of the exemption on their properties for tax year 2016.

Plaintiffs' counsel did not promptly submit the materials identified by the court at the April 11, 2014 hearing as necessary for resolution of the parties' cross-motions for summary judgment. On August 1, 2016, the court issued an Order noting that plaintiffs' counsel was informed that the summary motion record was insufficient and had "been given numerous opportunities over a period of years to submit evidence" to complete the motion record, but had "failed to supplement the motion record" with the missing evidence. In the Order, the court denied the parties' cross-motions for summary judgment and set a trial date of September 6, 2016.

Prior to the September 6, 2016 trial date, plaintiffs requested that the court reconsider its August 1, 2016 Order and consider additional evidence to be submitted by plaintiffs in support of their previously denied motions for summary judgment. The court agreed with this request. Plaintiffs thereafter submitted the evidence identified by the court at the April 11, 2014 hearing. The court subsequently heard oral argument from counsel on the cross-motions for summary judgment.

On March 30, 2017, the court entered Judgments granting plaintiffs' motions for summary judgment, denying defendant's cross-motions for summary judgment, and directing that the properties of plaintiffs Broadway Family Center and Mi Casita Day Care Center, Inc. be listed as exempt for tax years 2011, 2012, 2013, 2015, and 2016, and that the property of plaintiff Camden Day Nursey Association be listed as exempt for tax years 2012, 2013, 2015, and 2016.

In the tax year 2015 Judgment for each plaintiff, the court reserved decision with respect to tax year 2014 to permit the parties to brief the jurisdictional question addressed in this opinion. In addition, the court permitted plaintiffs to renew their motion for attorney's fees.

This consolidated opinion follows supplemental briefing by the parties. Although plaintiffs' original motion for attorney's fees was made pursuant to R. 1:4-8, their supplemental submissions seek the award of attorney's fees pursuant to R. 1:10-3.

II. Conclusions of Law

A.      Jurisdiction With Respect to Tax Year 2014.

The "Tax Court is vested with limited jurisdiction" defined by statute. McMahon v. City of Newark, 195 N.J. 526, 546 (2008)(citing N.J.S.A. 2B:13-2 and Union City Assocs. v. City of Union City, 115 N.J. 12, 23 (1989)). "'The right to appeal a real property assessment is statutory, and the appellant is required to comply with all applicable statutory requirements.'" Macleod v. City of Hoboken, 330 N.J. Super. 502, 505 (App. Div. 2000)(quoting F.M.C. Stores Co. v. Borough of Morris Plains, 195 N.J. Super. 373, 381 (App. Div. 1984), aff'd, 100 N.J. 418 (1985)). The statutory scheme establishing this court's jurisdiction is "one with which continuing strict and unerring compliance must be observed . . . ." McMahon, supra, 195 N.J. at 543.

N.J.S.A. 54:3-21 provides as follows:

> [A] taxpayer feeling aggrieved by the assessed valuation of the taxpayer's property . . . may on or before April 1, or 45 days from the date the bulk mailing of notification of assessment is completed in the taxing district, whichever is later, appeal to the county board of taxation by filing with it a petition of appeal; provided, however, that any such taxpayer . . . may on or before April 1, or 45 days from the date the bulk mailing of notification is completed in the taxing district, whichever is later, file a complaint directly with the Tax Court, if the assessed valuation of the property subject to the appeal exceeds $1,000,000.

13

This statute is incorporated in R. 8:4-1(a)(4).

Each of the parcels at issue here is assessed at less than $1 million. Thus, in order to challenge the denial of their exemption requests for tax year 2014 it was necessary for plaintiffs to file timely appeals at the county board of taxation. Compliance with the statutory filing deadlines is essential to establish judicial jurisdiction to review an assessment. As our Supreme Court explained, "failure to file a timely appeal is a fatal jurisdictional defect." F.M.C. Stores v. Borough of Morris Plains, 100 N.J. 418, 425 (1985). Strict adherence to statutory filing deadlines is of particular concern in tax matters, given "the exigencies of taxation and the administration of local government." Id. at 424 (citing Princeton Univ. Press v. Borough of Princeton, 35 N.J. 209, 214 (1961)). A failure to file a timely Complaint divests this court of jurisdiction even in the absence of harm to the defendant municipality. Lawrenceville Garden Apartments v. Township of Lawrence, 14 N.J. Tax 285 (App. Div. 1994).

It is quite clear that plaintiffs did not satisfy the statutory filing deadline at the county board of taxation with respect to tax year 2014. Plaintiffs readily concede that their Petitions of Appeal were filed with the county board of taxation on May 2, 2014, a month after the statutory filing deadline. The staff of the County Tax Administrator rejected the Petitions of Appeal as untimely, and returned them, along with the un-negotiated filing fee checks, to plaintiffs' counsel.

In addition, N.J.S.A. 54:51A-9(a), entitled "Time for taking real property tax cases to tax court," provides "a complaint seeking review of adjudication or judgment of the county board of taxation shall be filed within 45 days of the service of the judgment." Plaintiffs' counsel, having, as he contends, not received a response from the board of taxation, took no steps to follow up on the Petitions of Appeal. Instead, he included allegations relating to the 2014 tax year in the Complaints he filed on August 13, 2015 regarding the tax year 2015 exemption denials.

There are multiple reasons why plaintiffs' August 13, 2015 Complaints did not establish jurisdiction in this court to review the denial of exemptions on plaintiffs' properties for tax year 2014. The assessed value of real property is set as of October 1st of each year. N.J.S.A. 54:4-23; Aperion Enterps, Inc. v. Borough of Fair Lawn, 25 N.J. Tax 70 (Tax 2009). Each tax year is treated independently and a taxpayer dissatisfied with an assessment is required to take the necessary steps to challenge that assessment in each tax year for which review is sought. This is reflected in our court rules.

R. 8:3-1(c) provides that in local property tax cases "a separate complaint must be filed for each tax year . . . ." In addition, each Complaint "shall set forth the claim for relief and a statement of the facts on which the claim is based . . . ." R. 8:3-4(a). Each Complaint must also be accompanied by a Case Information Statement in the form specified by the Tax Court and include a copy of the county board of taxation judgment for which review is sought. R. 8:3-5(a)(1). Finally, the appropriate filing fee must be paid for each Complaint. R. 8:12.

Plaintiffs complied with none of these rules with respect to a challenge to the denial of an exemption on plaintiffs' properties for tax year 2014. The Case Information Statements attached to the August 13, 2015 Complaints list only tax year 2015. The county board Judgments attached to the Complaints concern only tax year 2015. The filing fees paid by plaintiffs were calculated based on a single tax year – 2015. Paragraph 2 of each of the Complaints allege that "Plaintiff contests the action of the Camden County Board of Taxation with respect to its denial of Plaintiff's tax-exempt status for 2015. A copy of the Memorandum of Judgment are attached hereto collectively as Exhibit P-1."

It is true that each Complaint contains factual allegations that plaintiffs filed Petitions of Appeal with the county board of taxation with respect to tax year 2014 but "[t]o date, no hearing

15

has ever been scheduled for the 2014 local appeals, and no decision has been received." In addition, the "wherefore" paragraph of each count of the Complaints requests relief with respect to "2010, 2011, 2012, 2013, 2014, and 2015 local property taxes." These allegations are insufficient to constitute a separately alleged challenge to the denial of an exemption for tax year 2014, given the other deficiencies in the Complaints noted above.

Second, even if the Complaints filed on August 13, 2015 could be construed to constitute challenges to the denial of exemptions on plaintiffs' properties for tax year 2014, those Complaints were filed long after the relevant statutory deadline. The county board of taxation rejected plaintiffs' Petitions of Appeal as untimely on May 7, 2014. The August 13, 2015 Complaints were filed more than a year later. Although plaintiffs' counsel claims not to have received the county board's May 7, 2014 letter, he also concedes that he took no steps to follow up on the Petitions of Appeal. He did not contact the board to inquire when the appeals would be heard; he apparently did not notice that the four checks drawn on his law firm's business account for filing fees for the Petitions of Appeal were not deposited by the county board. He even filed tax year 2015 Petitions of Appeal with the county board on behalf of plaintiffs, and received Judgments from the county board on the tax year 2015 appeals, without inquiring about the status of the tax year 2014 appeals on the same properties. There is simply no reasonable excuse for counsel's failure to follow up on the tax year 2014 Petitions of Appeal. Moreover, the 2014 Petitions of Appeal were themselves late and were properly dismissed by the county board of taxation.

As Judge Brennan recently held, a taxpayer's failure to file a timely appeal "is a fatal flaw, denying this court jurisdiction to provide relief, despite the strength of the exemption claim" asserted by the taxpayer. Positive Health Care, Inc. v. City of Newark, 29 N.J Tax 213, 219 (Tax 2016), appeal pending. Thus, although the municipality in that case ultimately stipulated that the

16

taxpayer's property was exempt for tax year 2011, the year in which the taxpayer filed a timely appeal, the court denied a motion to amend the taxpayer's Complaint to include tax years 2010, 2012, 2013, and 2014, even though use of the property had not changed, because the taxpayer had not filed timely appeals of the exemption denials for those tax year. The court noted that "[c]ompliance with statutory filing requirements is an unqualified jurisdictional imperative, long sanctioned by the courts." Id. at 221. "There are multiple cases where the Tax Court has had to affirm an assessment of otherwise tax-exempt property based on a taxpayer's failure to appeal the assessment of taxes in a timely fashion." Ibid. (citing City of Newark v. Block 322, Lots 38 and 40, 17 N.J. Tax 103 (Tax 1997)). The court followed these precedents, holding that

> [a]lthough Newark has conceded the exempt status of the properties
> . . . and does not dispute that [the taxpayer] would qualified for an
> exemption in tax years 2010, 2012, 2013, and 2014, the filing of [an
> Amended Complaint challenging the denial of an exemption for
> those years] would ultimately be dismissed due to failure to timely
> file tax appeals for those years.
>
> [Id. at 224.]

Plaintiffs, relying on the square corners doctrine, argue that the City should be estopped from asserting a lack of jurisdiction with respect to tax year 2014. The court is not persuaded by plaintiffs' argument. The Supreme Court explained the scope of the square corners doctrine in F.M.C. Stores Co., supra. The Court's directive was clear:

> We have in a variety of contexts insisted that governmental officials
> act solely in the public interest. In dealing with the public,
> government must "turn square corners." Gruber v. Mayor and Tp.
> Com. of Raritan Tp., 73 N.J. Super. 120 (App. Div.), aff'd., 39 N.J.
> 1 (1962). This applies, for example, in government contracts. See
> Keyes Martin v. Director, Div. of Purchase and Property, 99 N.J.
> 244 (1985). Also, in the condemnation field, government has an
> overriding obligation to deal forthrightly and fairly with property
> owners. See Rockaway v. Donofrio, 186 N.J. Super. 344 (App. Div.
> 1982); State v. Siris, 191 N.J. Super. 261 (1983). It may not conduct

itself so as to achieve or preserve any kind of bargaining or litigational advantage over the property owner. Its primary obligation is to comport itself with compunction and integrity, and in doing so government may have to forego the freedom of action that private citizens may employ in dealing with one another.

[100 N.J. at 426-27.]

The currency of the square corners doctrine in the area of taxation was highlighted by the Court:

[S]tatutory provisions governing substantive standards and procedures for taxation, including the administrative review process, are premised on the concept that government will act scrupulously, correctly, efficiently, and honestly. It is to be assumed that the [taxing authority] will exercise its governmental responsibilities in the field of taxation conscientiously, in good faith and without ulterior motives.

[Id. at 427.]

"One of the hallmarks of the 'turn square corners' doctrine is that its application is not dependent upon a finding of bad faith." CBS Outdoor, Inc. v. Borough of Lebanon Planning Bd., 414 N.J. Super. 563, 586-87 (App. Div. 2010); accord Gastime, Inc. v. Director, Div. of Taxation, 20 N.J. Tax 158 (Tax 2002). The circumstances under which the doctrine will be applied to limit government action are not static. Equitable relief under the doctrine "cannot be exercised or withheld rigidly, but [is] always subject to the guiding principles of fundamental fairness." New Concepts For Living, Inc. v. City of Hackensack, 376 N.J. Super. 394, 404 (App. Div. 2005).

Courts have not hesitated to apply the doctrine to preclude the assessment of tax where taxpayers made financial decisions relying on representations by State officials regarding how tax laws will be applied, only to have those officials change position later. For example, in Residuary Trust A v. Director, Div. of Taxation, 28 N.J. Tax 541 (App. Div. 2015), the Division of Taxation issued advice in 1999 in the State Tax News, its bi-monthly newsletter, that no tax would be assessed in the circumstances in which the taxpayer found itself seven years later. The taxpayer

filed a return for tax year 2006 consistent with the Division's 1999 published advice. In 2009, the Division issued a notice assessing tax against the taxpayer, taking a position "at variance with the clear guidance it had provided . . . taxpayers" and asserting "for the first time" that the taxpayer's circumstances supported the assessment of tax. Id. at 547.

The Appellate Division affirmed this court's reversal of the tax assessment under the square corners doctrine. As the court succinctly explained:

> The square corners doctrine is particularly important in the field of taxation, because trusts, businesses, individuals and others must be able to reliably engage in tax planning and, to do so, they must know what the rules are. It is fundamentally unfair for the Division to announce in its official publication that, under a certain set of facts, a trust's income will not be taxed, and then retroactively apply a different standard years later.
>
> [Id. at 548 (citations omitted).]

Similarly, in Lowe's Home Centers, Inc. v. City of Millville, 25 N.J. Tax 591 (Tax 2010), this court applied the square corners doctrine to preclude a city from negating a tax exemption agreement with a taxpayer who redeveloped blighted property. In that case, after the property was redeveloped, the municipal tax assessor made a written representation to the taxpayer that the deadline for applying for the exemption was July 1. The taxpayer submitted its application on June 30, before the deadline identified by the assessor. The exemption was approved. Id. at 596-97. Two and a half years later, the municipality attempted to rescind the exemption because the actual deadline for the exemption application was June 26, contrary to the tax assessor's advice to the taxpayer, making the application late. Id. at 597.

Despite the fact that the application was submitted after the correct deadline, this court precluded revocation of the exemption. In reaching its decision, the court noted that the taxpayer reasonably relied on the tax assessor's representation when submitting its exemption application

on June 30, and had relied on the availability of the exemption when deciding to undertake redevelopment of the troubled property. In addition, the municipality had secured the benefits of the economic development that was the basis of the award of the exemption. The court held that allowing revocation of the exemption after the taxpayer had redeveloped the area and relied on the assessor's representation of the application deadline, albeit incorrect, "would seriously undermine the [economic development] statute's purpose by introducing an element of uncertainty to the development planning process." Id. at 605. Moreover, revocation of the exemption would "permit [the municipality] to gain the benefit of its bargain with [the taxpayer] while depriving the property owner of the tax benefits that motivated the construction" of the property. Id. at 605-06. The court concluded that the taxing authorities

> fell short of the standards of fairness and fair dealings that taxpayers have a right to expect from public officials. Proper administration of our tax laws . . . demand[s] consistency and fairness from municipal officers in their dealings with property owners.

> [Id. at 606.]

More recently, in Milligan v. Director, Div. of Taxation, 29 N.J. Tax 381 (Tax 2016), this court applied the square corners doctrine to preclude the retroactive application of the gross income tax to winnings from certain lottery prizes. In those cases, the court held that an amendment to the Gross Income Tax Act to, for the first time, extend the tax to New Jersey lottery winnings could not be applied to lottery winnings from prizes awarded prior to the amendment of the statute. The court's holding was based, in large part, on representations made by State lottery officials to market participants that New Jersey lottery winnings were not subject to gross income tax. The court held that such statements, which were true at the time they were made, were intended as inducements to sell lottery tickets, id. at 402, were reasonably relied upon by taxpayers when purchasing their

lottery tickets, ibid., and became material terms of a contract between the State and the lottery winners, ibid. See also Harrington v. Director, Div. of Taxation, 29 N.J. Tax 370 (Tax 2016), and Leger v. Director, Div. of Taxation, 29 N.J. Tax 354 (Tax 2016), issued on the same day as Milligan, supra, and applying the square corners doctrine to preclude assessment of the gross income tax on lottery winnings in similar contexts.

The opinion based on facts most akin to those presently before the court is New Concepts, supra. In that case, the tax assessor sent notice of the revocation of a tax exemption to the taxpayer at an address the tax assessor knew to be incorrect. 376 N.J. Super. at 396-97. The taxpayer did not become aware of the exemption revocation until after the time in which to appeal that decision had passed. Id. at 397. Municipal officials thereafter engaged in discussions with the taxpayer creating the impression that the matter could be resolved informally without the need for an appeal to the Tax Court. Id. at 398-99. Relying on these discussions, the taxpayer did not file an appeal within a reasonable time after receiving notice that the exemption had been removed. It was not until after the tax assessor announced his position that the taxpayer was time barred from challenging the removal of the exemption that an appeal was filed with this court. The Appellate Division, finding that the municipality had lulled the property owner into foregoing an appeal, held that the square corners doctrine barred the municipality from asserting that the Complaint was untimely. Id. at 401-05 (citing W.V. Pangborne & Co. v. Department of Transportation, 116 N.J. 543 (1989)).

Here, plaintiffs' square corners argument is based on the March 14, 2014 letter and the emails plaintiffs' counsel exchanged with defendant's counsel and the court on March 17, 2014. Those communications plainly state that plaintiffs' counsel would consent to an extension of time to respond to plaintiffs' summary judgment motion on two conditions: that defendant would waive

the April 1, 2014 filing deadline, and that defendant would agree to execute a Consent Order applying the court's decision with respect to tax year 2013 to tax year 2014. Shortly after the parties reached this agreement, defendant's counsel memorialized in writing that the City does not have the legal authority to extend the filing deadline. Defendant's counsel reported that this information had been transmitted to plaintiffs' counsel and, as a result, he had withdrawn his consent to an adjournment. At that point, the agreement between the parties' counsel regarding an adjournment of the motion was rescinded. In fact, after notification from the City that it lacked the authority to waive the filing deadline, plaintiffs' counsel participated in a telephone conference with the court during which he did not consent to defendant's adjournment request.

It is, therefore, not credible for plaintiffs' counsel to argue that he did not file timely 2014 appeals because he remained under the impression that defendant would enter into a Consent Order to apply the court's holding with respect to tax year 2013 to tax year 2014. Executing a Consent Order to apply the court's decision for tax year 2013 to tax year 2014 (which the city also does not have the legal authority to do) was offered by the City in exchange for plaintiffs' consent to an adjournment. That consent was withdrawn, necessitating a telephone conference with the court on short notice. Nothing in the motion record suggests that after counsel conferred with the court, the City separately agreed to enter into a Consent Order with respect to tax year 2014 or that plaintiffs offered anything in return for that agreement.

Furthermore, during the telephone conference with the court, held prior to the April 1, 2014 filing deadline, the court informed plaintiffs' counsel that the court could not grant relief with respect to tax year 2014 unless its jurisdiction to do so was established through the filing of timely appeals for that tax year. Plaintiffs' counsel did not heed this advice.

Nor does the court find support in the motion record for the conclusion that the City was attempting to gain an untoward advantage by lulling plaintiffs into not filing timely Complaints for tax year 2014. At first, defendant was attempting to secure a two-week extension to respond to plaintiffs' summary judgment motion by agreeing to apply the court's tax year 2013 decision to tax year 2014. However, once defendant's counsel was informed that the City was not legally authorized to waive the filing deadline, defendant's counsel informed plaintiffs' counsel that her offer to extend the filing deadline was rescinded. Plaintiffs' counsel immediately thereafter withdrew his consent to the adjournment. It was only after a telephone conference with counsel that the court granted the two-week extension over plaintiffs' objections. There is nothing in the motion record suggesting that the City's extension request was a rouse to convince unwary taxpayers not to file challenges for tax year 2014.

The court is also not persuaded by plaintiffs' reliance on Prospect Hills Apartments v. Borough of Flemington, 1 N.J. Tax 224 (Tax 1979). In that opinion, which was issued shortly after the founding of this court, Judge Conley dismissed as untimely a Complaint filed one day after the statutory filing deadline. Although the court noted that "appropriate circumstances" might permit the tolling of this court's statutory filing deadlines "'if the purpose underlying the statutory scheme would thereby be effectuated,'" the court did not decide that question. Id. at 227 (quoting White v. Violent Crimes Comp. Bd., 76 N.J. 368, 379 (1978)).

In the decades since the Prospect Hills Apartments opinion was issued judicial precedents, including appellate opinions, have adopted the view that this court's statutory filing deadline is to be strictly applied. While there have been a few exceptions to this rule, see New Concepts, supra and Centorino v. Township of Tewksbury, 18 N.J. Tax 303 (Tax 1999)(appeal after filing deadline permitted within reasonable time after notification of assessment, where original notification sent

to incorrect address), the court finds that the facts of this case do not support a finding of "extraordinary circumstances which will excuse missing a filing deadline." Palanque v. Lambert-Woolley, 168 N.J. 398, 405 (2001)(quoting Burns v. Belafsky, 326 N.J. Super. 462, 470 (App. Div. 1999), aff'd, 166 N.J. 466 (2001)).[1]

B.      Plaintiffs' Motion for Attorney's Fees.

New Jersey disfavors the shifting of attorney's fees. North Bergen Rex Transp., Inc. v. Trailer Leasing Co., 158 N.J. 561, 569 (1999). However, "a prevailing party can recover those fees if they are expressly provided for by statute, court rule, or contract." Packard-Bamberger & Co., Inc. v. Collier, 167 N.J. 427 (2001)(citation omitted). Plaintiffs' request for fees is based on R. 1:10-3.

The rule, in relevant part, provides:

> Notwithstanding that an act or omission may also constitute a contempt of court, a litigant in any action may seek relief by application in the action. A judge should not be disqualified because he or she signed the order sought to be enforced. . . . The court in its discretion may make an allowance for counsel fees to be paid by any party to the action to a party accorded relief under this rule.
>
> [R. 1:10-3.]

"[U]nder the clear language of the Court Rules, R. 1:10-3 is fully applicable to proceedings in the Tax Court." Arrow Mfg. Co. v. Town of West New York, 321 N.J. Super. 596, 599 (App. Div. 1999). In the appropriate circumstances, the court will grant attorney's "fees where one party can show a conscious, intentional failure or reckless indifference on behalf of the other party" to a

---

[1]      Although the Freeze Act, N.J.S.A. 54:51A-8, allows for a Tax Court Judgment setting an assessment to apply to the next two tax years under certain circumstances, whether or not an appeal was filed for those tax years, the statute does not apply to exemption determinations. Boys' Club of Clifton, Inc. v. Township of Jefferson, 72 N.J. 389, 405 (1977); Blair Academy v. Township of Blairstown, 95 N.J. Super. 583, 592-93 (App. Div.), certif. denied, 50 N.J. 293 (1967).

court order or judgment. <u>Petrie Retail, Inc. v. Town of Secaucus</u>, 19 <u>N.J. Tax</u> 356, 365 (Tax 2001)(internal quotations and citations omitted). The published opinions concerning application of the rule in the Tax Court arise from the failure of municipalities to refund taxes after issuance of Tax Court judgments reducing assessments.

The rule has no application in the present matter. Plaintiffs do not argue that the City failed to comply with an Order or Judgment of this court. Their fee request is based, instead, on the contention that the municipal tax assessor acted in bad faith when he revoked the exemptions on plaintiffs' properties. In addition, plaintiffs contend that the City did not provide an explanation for the revocations for several years until it requested additional information regarding the operation of plaintiffs' day care centers. These allegations do not fall within the ambit of <u>R.</u> 1:10-3. An award of attorney's fees pursuant to that rule is not warranted.[2]

Very truly yours,

/s/Hon. Patrick DeAlmeida, P.J.T.C.

---

[2] Plaintiffs do not seek the award of attorney's fees pursuant to <u>R.</u> 1:4-8(a), which requires that the moving party provide notice of its intention to seek sanctions and an opportunity to withdraw an allegedly frivolous pleading. <u>See</u> <u>Ferolito v. Park Hill Ass'n, Inc.</u>, 408 <u>N.J. Super.</u> 401, 408 (App. Div.), <u>certif. denied</u>, 200 <u>N.J.</u> 502 (2009)(citing <u>Trocki Plastic Surgery Ctr. v. Bartkowski</u>, 344 <u>N.J. Super.</u> 399, 406 (App. Div. 2001), <u>certif. denied</u>, 171 <u>N.J.</u> 338 (2002)). Nor do plaintiffs explain why, if the revocation of the exemptions on their properties were so unsupported as to warrant an award of attorney's fees, plaintiffs did not move for summary judgment until March of 2014, several years after the exemptions were revoked and after multiple tax appeals were filed. In addition, plaintiffs did not produce the information identified by the court at the April 11, 2014 summary judgment proceeding for more than two years, and only after the court denied plaintiffs' motions, essentially for a failure to respond to the court. This procedural history does not support a claim that the City should pay the fees incurred by plaintiffs.